UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>$33,000.00 UNITED STATES CURRENCY, )<br>)<br>Defendant. ) | Cause No. 1:21-cv-01281 |

**COMPLAINT OF FORFEITURE IN REM**

The United States of America, by counsel, John E. Childress, Acting United States Attorney for the Southern District of Indiana, and Kelly Rota, Assistant United States Attorney, alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action seeking forfeiture of certain property pursuant to 21 U.S.C. § 881(a)(6) because the Defendant Property constitutes proceeds of, or is property used to facilitate, a violation of the Controlled Substances Act.

**PARTIES, JURISDICTION AND VENUE**

2. The Defendant is Thirty-Three Thousand Dollars and No Cents ($33,000.00) in United States Currency ("the Defendant Property"). The Defendant Property was taken into custody of the United States Drug Enforcement Administration ("DEA"). The Defendant Property when originally seized comprised $33,000.00 and was assigned Asset Identification Number 21-DEA-671596.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 (district courts have original jurisdiction of all civil actions commenced by the United States) and § 1355

(district courts have original jurisdiction of any action for forfeiture).

4. This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S. C. § 1355(b) (forfeiture action can be brought in a district in which any of the acts giving rise to the forfeiture occurred), and Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (clerk must issue a warrant to arrest property in the government's possession).

5. This Court is the appropriate venue in this matter pursuant to 28 U.S.C. § 1395(a) and (b), in that the forfeiture accrued in the Southern District of Indiana.

**FACTS**

6. On November 20, 2020, an Indiana State Police Trooper Yan Dravigne, a member of Lake County High Intensity Drug Trafficking Area ("HIDTA") task force, was patrolling west on Interstate 70 near the 54-mile marker in Morgan County. He observed a Blue Kenworth tractor-trailer, whose driver was making unsafe lane movements – swerving toward the center line and driving on the shoulder - and initiated a traffic stop. As the officer approached the passenger side of the truck, the driver immediately exited the tractor and began walking toward the rear of the trailer. Trooper Dravigne found his behavior to be uncommon, based on his training and experience that most drivers remain seated inside their vehicle. The tractor-trailer had an Illinois registration, and the driver was later identified as Vasile Lindgren (Lindgren).

7. Lindgren told the officer that he was transporting food products from New Jersey to California and provided bills of lading confirming the shipments. Lindgren stated he did not have a logbook to record his hours of service and claimed that was due to the Covid-19 pandemic exemption. Lindgren said that on Tuesday, November 17, 2020 he delivered freight to Jessup, Maryland, then drove east 200 miles to North Bergen, New Jersey without cargo, and

2

rented a motel for two days.  Based on this trooper's training and experience in performing more than 9,000 motor carrier compliance inspections, Lindgren's information did not equate with routine trucking industry standards.

8. One of Lindgren's bills of lading indicated that on Wednesday, November 18, 2020, Lindgren had made a check payment to a business in New Jersey in the amount of $18,337.00, to purchase pallets of freight to be transported in the trailer.  This practice is highly unusual and not common with routine truck industry standards.

9. A record check with the El Paso Intelligence Center (EPIC) revealed that Lindgren had a prior arrest involving the distribution of narcotics.

10. The trooper requested to search Lindgren's truck, and provided a consent to search form, which Lindgren signed.  A search of the tractor cab revealed a duffel bag located on the upper section of the sleeper berth.  Inside the duffel bag was a plastic bag containing numerous rubber-banded bundles of United States currency, which was mingled with clothing and personal hygiene items.  Lindgren stated that the cash was from receiving cash payments he received after delivering freight to customers.  Based on the trooper's training and experience, this practice is highly unusual practice in the standard trucking industry.  Lindgren stated he did not know how much money was in his duffel bag.

11. Drug Enforcement Administration Task Force Officers (TFOs) Mathew Carver and Derek Heller arrived on the scene and interviewed Lindgren.  Prior to asking any questions, TFO Carver read Lindgren his Miranda Warnings.  Lindgren said he understood his rights and agreed to speak with investigators.  During the recorded interview, Lindgren claimed ownership of the cash and stated that the money was obtained from customers following the delivery of freight.  Lindgren stated that he maintains a logbook to assist him in keeping track of the

payments. Lindgren estimated that the currency located inside his truck was between $80,000.00 and $90,000.00. Lindgren was asked about any prior encounters with DEA and admitted he was involved with a previous DEA case in Indiana. Lindgren admitted that DEA seized approximately $39,000.00 cash from him in 2018. Upon conclusion of the field interview, TFO Carver escorted Lindgren to the cab of the truck to obtain the logbook. Lindgren explained that the handwritten numbers were associated with both check and cash payments for previous freight deliveries.

12. Plainfield Police Department Officer Rob Prichard arrived on scene with his canine partner, Jocko. Officer Prichard had Jocko perform a free air sweep of the currency, and the canine provided a positive alert, indicating the presence of controlled substances. TFOs Carver and Heller seized the cash as proceeds of, or is property used to facilitate, a violation of the Controlled Substances Act.



13. Further investigation revealed that on March 16, 2018, DEA seized $39,920.00 rubber-banded cash from Lindgren, which was in a cardboard box in his tractor-trailer. Lindgren gave inconsistent accounts of the money's origin at that time.

14. Additionally, on April 27, 2018, DEA was conducting surveillance at a truck stop

and saw Lindgren meet with a Robert McCarthy, who provided Lindgren with a cardboard box containing $19,800.00. DEA stopped Lindgren after the transaction and seized the cash. McCarthy cooperated with agents and provided information about storage lockers used by himself and Lindgren that contained approximately 10 pounds of crystal methamphetamine, and approximately 10 pounds of marijuana and 44 packages of marijuana gummies.

15. McCarthy and Lindgren were charged with conspiracy to possess with intent to distribute 500 grams of more of a substance containing methamphetamine in a criminal complaint under Cause No. 1:18-mj-00450. Lindgren was dismissed from the complaint. McCarthy was indicted and pleaded guilty to possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) in the case *United States of America v. Robert McCarthy,* Cause No. 1:18-cr-000241-TWP-DLP.

16. The DEA initiated administrative forfeiture proceedings for the $33,000.00 seized currency. On February 22, 2021, Vasile Lindgren, by counsel, filed a claim with the DEA. In his claim Lindgren asserts that he collected this money over a nine-month period, as he is paid around $4,000.00 to $5,000.00 in cash for his trips between California and New Jersey. After review, the DEA referred Vasile Lindgren's claim to the United States Attorney's Office for judicial forfeiture proceedings.

## PERTINENT STATUTES

17. Under 21 U.S.C. § 841(a)(1)-(2), it is unlawful for any person to manufacture, distribute, or dispense—or possess with intent to manufacture, distribute, or dispense—a controlled substance.

18. Under 21 U.S.C. § 881(a)(6), all moneys furnished or intended to be furnished by

any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of the Controlled Substances Act, including 21 U.S.C. § 841(a)(1), shall be subject to forfeiture to the United States, and no property right shall exist in them.

## CLAIM FOR RELIEF

19. Based on the facts alleged above, the $33,000.00 is "moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance," and/or "proceeds traceable to such an exchange," and/or "moneys … used or intended to be used to facilitate any violation of [the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*]," and is therefore subject to forfeiture to the United States of America pursuant to Title 21, United States Code, Section 881(a)(6).

WHEREFORE, the United States prays that the Clerk of the Court issue a warrant for the arrest of the Defendant Property pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Property forfeited to the United States for disposition according to law; and that the United States be granted all other just and proper relief.

    Respectfully submitted,

    JOHN E. CHILDRESS
    Acting United States Attorney

By:   *s/ Kelly Rota*
    Kelly Rota
    Assistant United States Attorney
    Office of the United States Attorney
    10 W. Market St., Suite 2100
    Indianapolis, Indiana 46204-3048

Telephone: (317) 226-6333
Fax: (317) 226-5027

## VERIFICATION

I, Matthew Carver, hereby verify and declare under penalty of perjury that I am a Task Force Officer for Drug Enforcement Agency ("DEA"), that I have read the foregoing Verified Complaint in Rem and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters I believe to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement offices, as well as my investigation of this case, together with others, as a Task Force Officer with DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 5-21-2021

Matthew Carver
TFO, Drug Enforcement Agency